19-3789 from the District of Minnesota, United States v. Martavis James. All right. Good morning, Council. Mr. Morrison for the appellate. You may proceed when you're ready. Thank you, Judge. First off, I want to thank the court for appointing me to represent Mr. James. This case is about cell phones and the privacy around cell phones. We all know the majority of us carry cell phones and can barely go minutes without turning them on to look at the warming glow of our cell phone screens. The Supreme Court has recognized this. But if this court upholds the search warrants in this case, the court will, in essence, be creating a situation where any time a crime is committed, law enforcement can simply, based upon the conclusion that we all have cell phones, get a search warrant and collect anybody's location data originating a time they made a call, who they called. All of that information scooped up without any particular evidence that an individual that committed a crime even possessed a cell phone at the time. It will broadly blow through any privacy interests that people have in their cell phone location data and in who they're calling at a certain time or a certain place. The consequences of this are a dramatic intrusion into the privacy interests of all of us, and in this case, Mr. James. A crime happens near a place of worship. A crime happens near a medical place. A crime happens near a location where an expression of First Amendment rights are occurring, and law enforcement will know, based on broad allegations and no specific facts, that every single person who was there who had a cell phone. Counsel, don't they, I mean, refresh my recollection on the record, but that's not really what the officers knew here, right? They just got the phone numbers, and once they kind of found a common phone number at these locations, then they identified the person. Is that what happened here, or am I wrong on the record? The search warrant asked for and returned all individuals who used a cell phone or had a cell phone near the crime scene location. Well, when you say individuals, it's not a list of names, is it? No, it's just a list of the phone numbers of the cell phone that was present in the location, but it also included any numbers that that person may have texted or called, and if it was a call, the length of the call that occurred during the time frame the data was collected from. So it wasn't just seeking an individual phone number that then required additional search warrants, and the other part of this is that cell phone numbers, while originally may have been much more private, much more difficult to get subscriber details, that information is much more commonly available on the internet through public searches now. So by just saying it's only giving a cell phone number and not providing great information, that's not entirely true. You can identify individuals, and on top of that, you're identifying another individual that they may be talking to at that very moment. Counselor, I sympathize on this. At first glance, I thought, boy, this seems like an infringement on folks' privacy, but then when I thought about it, I said, is there a limiting principle? Because I am worried about the slippery slope here, but the limiting principle might well be that you have a series of crimes committed in different places at different times with a common modus operandi. So while there would not be probable cause for what you suggested earlier, a single crime in a place of worship or at a meeting or something like that, if you had six such crimes or five such crimes, I guess there were five here, that all look the same, does that make it different? And if not, why not? So I don't think it makes it different unless there is at least some evidence that a person actually possessed a cell phone. I think the real problem here is that the search warrants here are based upon guesses and on assumptions versus facts. I mean, search warrants require facts that there's actually going to be evidence recovered that's relevant to what you're searching for, right? And so in this case, there is ample evidence in these search warrants that say, and the officer quite frankly says, we have no evidence that he was on the phone during this. And in fact, they have even more than that. They have him on surveillance walking around the store, staking it out presumably, for 15 plus minutes. This is in the first search warrant. And during that entire time, they don't see him pull out his cell phone to look at the time to do anything. So I think the problem here, Judge, is if they would have just had the simple fact of, yes, we see this guy with a cell phone, then it makes sense. You're going to recover real data. Otherwise, Judge, I mean, to say, well, we're going to string together a bunch of robberies. We have no evidence through all of the robberies, which is the case here of cell phone use. But nevertheless, we want to get all cell phone data usage. That doesn't seem to comport with the requirements of a warrant. Well, I know that Judge, on the cell phone issue and the absence of evidence on the cell phone, I know Judge Srinivasan, and I think it was a Williams case, I can't remember the exact name of the case, wrote that. And said that there was a lack of probable cause. But I think what that case maybe forgets is we're talking about probabilities, not quantifiable probabilities, but probabilities when it comes to probable cause. And can't we then take what Chief Justice Roberts said in some of these cell phone cases that essentially, you know, an alien visiting from Mars would think that a cell phone is an appendage and that 90 percent of or more people have cell phones. And therefore, there's a likelihood that he had a cell phone. And there's a likelihood that if he had a cell phone, he would have taken it to each one of these robberies. Why isn't that a plausible argument? Because I think the framers certainly wanted the search warrants pursuant to the Fourth Amendment to require more than plausibility or probability. That was bare bones. I think in most of the cases the court's suggesting, if you read them closely, there's at least a hint of the items being present, a cell phone being used. I don't think the framers intended for the document box on the desk, even though everybody had a document box on their desk that they kept their documents in, that simply because of that fact, we should be able to go in and search people's houses and offices and look through their document boxes. There still needed to be some particularity in the warrant request, not just assumptions of human practice. I think that becomes an extremely slippery slope if we just simply say, because everybody does this. So then what happens? Well, most people have apartments or homes. So does that justify searching an apartment and a home for contraband because they're likely to be storing their contraband there? I don't think this court would even come close to accepting that probability to justify a search warrant. And in essence, that's what's happening here in this case, is that the court signed off on warrants based upon no specific facts. And like I said, evidence that suggests the opposite, that he didn't have a cell phone. And that assumption just, it doesn't square with the particularity requirements. I want to also address Leon here, because I know that even if I am fortunate enough to get to where I want to go, Leon is still out there. I do think in this case, for the same reasons that the lacking of probable cause is so strong, Leon comes in here too. Leon gives the government great deference and gives them a way to get past bad searches all the time, but it's not limitless. And in this case, where the only basis for the requirement or the request for probable cause is in essence a phishing expedition on assumptions of general human behavior, where there is evidence in the warrant itself that perhaps this person did not possess a cell phone, I don't think probable cause should save this warrant. And I think it needs, in this rare case, not just for the broader societal issues about search warrants and the limits of them in relation to cell phone data. In this case, as is applied to Mr. James, Leon should not save the search warrant in this case. And I'm hitting my five minutes for rebuttal, so I'll, unless there's a question, I'll save that. Okay. Thank you, counsel. Mr. Cheever. Thank you, Your Honor. Mike Cheever. I'm appearing on behalf of the United States in this case. I want to respond to some of the court's questions on the probable cause issue, but I want to primarily get the court to engage in a discussion on standing for a couple reasons. One is I think there's a very simple way to resolve this case because the defendant has waived standing by saying he did not have the cell phone at the times of the robberies. He said it wasn't in his possession. And then second, the Miller-Smith line of cases should be enough in this case for the court to hold. There's no reasonable expectation for privacy. As to the probable cause, I want to make sure we're working from the right standard. Mr. Morrison talks in terms of probable cause, but that's not the issue per se for this court. The question for this court is whether the three separate state court judges had a substantial basis to believe there was a fair probability of finding evidence from this search warrant. The search warrant was very narrowly tailored to get, as Judge Kobus noted, phone numbers at six particular locations from just a single cell tower. And the only twist in this case is the fact that we did not, through those search warrants, show that the defendant was using a cell phone during the robberies. There was some surveillance cameras, there were witnesses, and none of that got into a search warrant discussing a cell phone being used by this defendant. That's resolved by, as Judge Strauss commented, the ubiquity, and the Supreme Court has talked on the ubiquity, and Mr. Morrison himself says that everyone has a cell phone. And so I'm not going to dwell further on the probable cause issue unless you have questions. Well, I do, which is, I'm concerned about the slippery slope. That's one of the things that struck me about this case. And so I'm wondering what happens if it's a single crime? A single crime happens, a convenience store is held up, and the government comes in and says, well, everyone has a cell phone, so we're going to start looking at numbers. What do we do in a situation like that? Is that a different case? And if so, what do you think your position would be on it? I hate to give you the, it's all on facts, but the reason there's no slippery slope is probable cause is so fact-intensive. Just because you can do it in this instance on one, the first judge was based on three separate crimes, that's not going to let people do it for a single crime every time. But in some cases, yes, if you see a single defendant travel with that phone down a set of streets and you want to find where those four, who went by those four towers, absolutely. I would make a great argument for probable cause in that case. It's not just the one instance. There's no real rule, no bright line you're drawing. You're taking these facts and finding that these three judges, separate judges in state court, had a substantial base to determine in these facts, based on these specific warrants, look in this for this narrow information. There was probable cause or a fair probability that evidence would be found. I just think that worry, as you yourself indicated, you came to the conclusion that maybe it's not there. There's not a slippery slope issue in these types of cases, in my view, not on this type of resolution of it. As I suggested, I think the court should resolve it on the standing issue. I recognize the district court did not resolve it in that way. I say this for two reasons. The first that I suggested is it is extremely easy to do it based on the waiver. The defendant never put in any of his documents that the cell phone was his. We put in evidence in the search warrant affidavits that the cell phone was registered to him. There was a basis for the district court to find standing in terms of, or at least find that it was his cell phone. There wasn't a basis for reasonable expectation of privacy, as they'll get to. But at trial, the defendant, after the evidence was introduced, took the stand. He admitted the cell phone was his, but he used an alibi defense to say, this person whose name he only knows as Kid, his nickname, borrowed my car, which didn't have a stereo, so when he borrowed my car on these few times, he also borrowed my cell phone. It must have been him that robbed those stores. You don't have standing based on your cell phone. You have standing based on your cell phone being an extension of yourself and giving your own location. He said that's not what happened in this case. He didn't have standing in the actual cell phone for which the data was being obtained. How does that work? I understand the argument, and you can disclaim ownership of the property, but we don't seem to apply that rule, for example, when somebody says, not my drugs, right? Those weren't my drugs that you found. Yes, they do. Do you? Okay. Oh, yeah. That's not my suit. And that becomes a standing issue at that point, and therefore you can't challenge the Fourth Amendment. Absolutely, and there's protection for defendants in that situation. They can take the stand, they can put in an affidavit at the motions hearing and say, those are my drugs, and the government can't then use that statement at trial against the defendant. The system is set up just so you can say, those are my drugs. If you're saying they're not, that's a lack of standing.  Yeah, there's plenty of cases on exactly that situation. The way I would hope the court would resolve it is a way that would be useful to people in practice. The situation we have here is pretty common, and I think it's also fairly easy to decide this case on the basis of Miller and Smith, and distinct from the carpenter rare situation that the Supreme Court carved out. I think standing is a lot like probable cause. They are fact-specific. You don't need to, you know, finding a lack of a reasonable expectation of privacy in these circumstances doesn't mean there never will, but the Supreme Court made clear in Carpenter that it was dealing with a rare circumstance. It was dealing with a different circumstance in that there was an individual being, his information, a particular person's information was being obtained for, in the shortest instance, seven days. The court, in a footnote, narrowed its holding to a search warrant of 24-7 historical cell site information, location information, for a week. We have sets of hours on six different days that don't tell you anything about what the defendant is doing unless the defendant is robbing those stores, in which case you don't have a, you know, that's not a privacy issue we want to protect. Also, while we deal with CSLI, the cell site location information in this case, it's a tower dump, which again, Carpenter said it was not addressing, as we noted before. It's a string of numbers we get, and it's telephone numbers, and you get some information about how powerful the signal was, who was contacted, who wasn't. But it's not the sort of information that infringes much on anyone's expectation of privacy. The expectation of privacy in Carpenter that was carving out that rare exception was we knew everywhere you went for a full week, and that is what it took for Carpenter to say third-party doctrine has its limits. Of course it has its limits. I think every standing issue, the expectation of privacy issue is somewhat sui generis, and you've got to analyze where we're at in time, what the expectations are. In this case, the defendant didn't have a subjective expectation of privacy in those particular dates. He didn't have the phone, according to him, and his lawyer relied on that in his closing argument, and the lawyers have not since repudiated that statement and come back and told this court that no, the defendant did not have that cell phone on that date. More to the point, and what would be useful for us is that there's not an objective expectation of privacy in this narrow sort of information because this is the sort of thing in terms of being useful. This is a very narrowly tailored, very effective tool for law enforcement, and we can get the search warrants, we can get probable cause, but there's no need to do that if the court would take the tiny extension, if that, of Miller and Smith and extend the third-party doctrine to the facts of this case. Those are the points I wanted to make. I hope I've addressed your questions. If you have more, I'll take them. Otherwise, I'll rest on the brief. Just one quick question. I do find this, I disclaim the cell phone, it's not my cell phone. I find that to be an interesting argument. You argued standing in the brief, but I didn't see you make that particular argument in the brief. Is there somewhere you could direct me in the brief to that particular argument? No, you're dead on, Your Honor, and this is not an issue that the court has to reach in any event because the district court didn't reach it. It's not like I preserved an issue or an argument. I'm just, because I'm the appellee, I'm just suggesting a basis for the court to resolve this in an extraordinarily easy way and in a way that's just. The defendant shouldn't be able to tell the jury under oath that it's not his cell phone at the time of these incidents and then come here and expect you to waste your time on this argument. I wish we'd thought of it in our brief and we wouldn't be having this argument, I suspect. Okay, thank you. Yes, thank you, Your Honor. Okay, thank you, Mr. Cheever. Mr. Morrison, you have five minutes. Thank you, Judge. I'm going to start off with addressing the standing issue. The record on the standing issue was submitted to the district court. I mean, the defendant was arrested with the cell phone in question because he decided to get on the stand and testify as he did. I don't think that should erase the standing or change the record that the court considered in making the decision about the suppression issue. This court, just as the district court, should be limited in reviewing the search warrants on the record that the district court had in making the decision to deny the suppression issues. And the standing issue where the defendant created this or testified as he did shouldn't take away standing on this case. I think that's a red herring. Is there anything in the record where the defendant says this is my cell phone or admits that it's his cell phone? Other than being arrested with it in his car, not specifically, Judge, that I recall, I don't believe that happened. Ownership records? I mean, is there anything from any of the providers that said this is absolutely his cell phone, he paid for it? Yes, Your Honor. There is that in the record. And now I want to go back to the government's addressing of your slippery slope argument, Judge. I think what was telling in the government's answering of your question is they articulated the presence of facts that drive this slippery slope and specifically talked about specific facts that tied cell phones to the crime that they were asking for the search warrant on. And I do think that that's right. As I've been arguing, there needs to be more facts than just this assumption we all have cell phones, so therefore we should be able to get these records. And so Judge Shrestha, answer your question more directly. I don't think it matters if there's one robbery or 100 robberies that match up. If there is not a piece of evidence that suggests a cell phone was present, then there shouldn't be probable cause to go on a fishing expedition to find out if there was. I think that a search warrant requires, again, some tie to the thing you're searching for and not just an assumption about general human behavior to justify a warrant's legality. Can you think can you think of just just for example, can you offer a possible fact that would be sufficient that would supply the missing link? Not that it not not that it would be present here, but just for example, what would you suggest would be the kind of additional information that that would supply what you what you would say is missing here? I think one, even the glimpse of an object that appears to be a cell phone certainly would would provide the required fact. I think collateral information of suggesting somebody might be involved from a confidential informant suggesting somebody was involved in these robberies and they know they have a cell phone or they communicate with that person with a cell phone. Even those very remote facts at least provide a quantum of reliance that the individual committing a robbery or committing a crime would possess a cell phone at the time. So that's what I think, judge. And then I want to just real quick address the carpenter issues. Yes, the carpenter case certainly is narrow and certainly didn't explicit and explicitly said it's not addressing our doubts. But the government hasn't pointed to any case that has addressed our doubts. And I think importantly, the carpenter case and the cases that are coming out about cell phones, the courts are recognizing greater and greater protections and privacy interest in cell phones. And instead of what the government is suggesting here is that we go the other way and just allow these intrusions because they're minimal on people's privacy interest in cell phones. And it's recognizing that in reality, the Fourth Amendment should be providing greater protections for people's use and possession of cell phones. Thank you, judges.